UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| TIMOTHY MCINTYRE, | ) | |
| Plaintiff, | ) | |
| vs. | ) | 3:09-cv-00581-RCJ-VPC |
| HOWARD SKOLNIK et al., | ) | **ORDER** |
| Defendants. | ) | |

This case arises out of Plaintiff's firing, allegedly in retaliation for protected speech he made to an officer who responded to Plaintiff's report of a crime. Pending before the Court is that officer's Motion for Summary Judgment (ECF No. 40). For the reasons given herein, the Court grants the motion.

## I. FACTS AND PROCEDURAL HISTORY

On July 17, 2009, Plaintiff Timothy McIntyre was assaulted outside his residence. (Am. Compl. ¶ 7). Defendant Deputy Robert Stout of the Lyon County Sheriff's Office ("LCSO") responded to the scene, but Plaintiff believed Stout did not take the incident seriously and showed favoritism to the perpetrator. (*Id.* ¶ 8). Plaintiff "told Stout that Stout did not take the incident and its investigation seriously." (McIntyre Aff. 2, Oct. 12, 2010, ECF No. 42, at 16). On July 18, 2009, Stout contacted an unidentified person at the Nevada Department of Corrections ("NDOC"), where Plaintiff worked, and reported that Plaintiff had been

uncooperative, belligerent, and had falsified his statement. (Compl. ¶ 7). Plaintiff believes his subsequent firing was due to Stout's report. (*Id.* ¶ 10).

Plaintiff sued his employers and Lyon County in this Court. The Amended Complaint ("AC") replaces Lyon County with Stout. Plaintiff has sued Stout for First Amendment retaliation pursuant to 42 U.S.C. § 1983. Stout has moved for summary judgment on that claim.

## II.  SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's

1  evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

2      If the moving party meets its initial burden, the burden then shifts to the opposing party
3  to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*
4  *Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
5  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
6  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
7  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
8  626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment
9  by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*
10 *List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions
11 and allegations of the pleadings and set forth specific facts by producing competent evidence that
12 shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

13     At the summary judgment stage, a court's function is not to weigh the evidence and
14 determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
15 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are
16 to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely
17 colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

18 **III.   ANALYSIS**

19     Stout argues he is entitled to summary judgment for four independent reasons: (1) Stout
20 is protected by Nevada's Anti-SLAPP statute; (2) Plaintiff has provided no evidence of any
21 protected speech before Stout took the allegedly retaliatory action, but only speech he made after
22 the action, making a retaliation claim factually impossible; (3) Stout's actions were not based on
23 speech, but pure conduct; and (4) Stout has qualified immunity. Plaintiff argues that Stout is not
24 entitled to summary judgment for any of these reasons.

25 ///

### A.  Nevada's Anti-SLAPP Statute

The Nevada Anti-SLAPP statute immunizes persons from civil liability for certain good faith communications: "A person who engages in a good faith communication in furtherance of the right to petition is immune from civil liability for claims based upon the communication." Nev. Rev. Stat. § 41.650. "Good faith communication in furtherance of the right to petition" includes "*any*: . . . [c]ommunication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity." *Id.* § 41.637(2) (emphasis added). The state statute, however, can provide no immunity against federal causes of action. *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (noting that California's anti-SLAPP statute gives no protection against a federal Lanham Act claim); *see also Howlett v. Rose*, 496 U.S. 356, 367–71 (1990) (noting that state courts of general jurisdiction cannot consistent with the Supremacy Clause refuse to hear federal claims based purely on disagreement with the policies underlying the claims). Stout is therefore not protected from the First Amendment retaliation claim based on the Nevada Anti-SLAPP statute.

### B.  The Merits

In order to find a police officer liable for a First Amendment retaliation claim, a plaintiff must show that the officer "by his actions . . . deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the officer's] conduct . . . ." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994)). "The defendant's intent *is* an element of the claim." *Mendocino*, 14 F.3d at 464.

Individuals in their private capacities enjoy "qualified immunity" against constitutional claims where the right alleged to have been violated was not "clearly established" at the time of the alleged violation. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir.

Page 4 of 6

2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is "clearly established" if there is an authoritative case directly on point or if the available case law makes the answer clear to the defendant. *Inouye v. Kemna*, 504 F.3d 705, 714–15 (9th Cir. 2007).

A court uses a two-step analysis to determine qualified immunity: (1) the court asks whether there has been a constitutional violation; and (2) if so, the court asks whether the state of the law at the time of the alleged violation was clear such that a reasonable person in the defendant's position should have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  It is within a court's "sound discretion" which *Saucier* step to employ first; a court may examine the second step first in order to conserve resources and avoid unnecessary constitutional holdings. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

The complaint about Stout's behavior that Plaintiff made to the LCSO is irrelevant to the retaliation claim, because it is not disputed that Plaintiff made this complaint after Stout had already reported the incident to Plaintiff's employer (the alleged retaliation).  Before Stout reported the incident, the only speech Plaintiff had engaged in was: (1) Plaintiff's private complaint to Stout himself at the scene that he wasn't taking Plaintiff's criminal complaint seriously; and (2) Plaintiff's swiping away of his written statement from Stout in a symbolic expression of his disgust with Stout's handling of his criminal complaint.

Plaintiff telling Stout that he "did not take the incident and its investigation seriously," and perhaps Plaintiff's swiping the report away, are the only potentially "chillable" speech in this case. There is no evidence Stout reported the incident in order to chill Plaintiff's complaints about Stout.  Plaintiff simply produces no evidence supporting the intent element of the claim. Intent to cause a Plaintiff some harm as retaliation for having made speech is not cognizable harm if there is no intent to chill further speech. *See Sloman*, 21 F.3d at 1469; *Mendocino*, 14 F.3d at 464.  The only evidence available on this point is Stout's deposition testimony that he did not in fact intend that Plaintiff even get "written up," much less have his speech chilled, but only

that he wanted to bring Plaintiff's behavior to the attention of NDOC because he thought it deserved a verbal reprimand. There is no evidence supporting an inference that Stout reported the incident in order to chill a possible complaint to the LCSO about Stout's handling of the investigation, and in fact Plaintiff made precisely such a complaint. There is therefore no question of fact that no actual chilling of speech occurred. If no chilling occurred, or if a person of "ordinary firmness" would not have been silenced from future speech, there is no retaliation claim. *Mendocino*, 192 F.3d at 1300.

A person of ordinary firmness would not likely have had his speech chilled in his instance. Also, it is unclear, and in fact unlikely, that a complaint about a police officer's handling of a particular incident made directly to the police officer at the scene constitutes speech on a matter of public concern. There is no case law directly on point or making it clear that reporting Plaintiff's conduct at the scene to his employer would constitute a First Amendment violation under these circumstances. At most the question is close; too close to hold Stout liable for a First Amendment violation. The Court finds that Stout is entitled to qualified immunity under the second *Saucier* prong, even if there were evidence of Stout's intent to chill Plaintiff's speech adduced, which there is not.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 40) is GRANTED.

IT IS SO ORDERED.

Dated this 1st day of April, 2011.

_____
ROBERT C. JONES
United States District Judge